PETER C. CUNNINGHAM *vs.* BOSTON AND YARMOUTH STEAMSHIP COMPANY.

Suffolk.    December 6, 1916. — January 5, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Employer's liability, In maintaining electric lights.

In an action by a longshoreman against a steamship company for personal injuries alleged to have been caused by the defective condition of the electric lights in the hold of a vessel of the defendant where the plaintiff was at work engaged in unloading heavy lumber, if there is evidence that the electricity for the lights was generated in the vessel, that the lights flickered so as to "be up bright one minute and the next time they would be down, pretty near out," that the flickering was due to a defect in the wiring system or in the dynamo, and that the defect had existed for at least a week, the question of the defendant's negligence should be submitted to the jury.

TORT by a longshoreman against the Boston and Yarmouth Steamship Company, a corporation established under the laws of the Province of Quebec and having a usual place of business in Boston, for personal injuries sustained by the plaintiff on March 16, 1914, when in the employ of the defendant and at work in unloading lumber from the hold of a vessel of the defendant called the Prince George.   Writ dated June 25, 1914.

In the Superior Court the case was tried before *Chase,* J.   It appeared that the defendant was not a subscriber under the workmen's compensation act.   The evidence is described in the opinion.   At the close of the evidence the defendant asked for the following rulings, besides others which were made by the judge:

"1. On all the evidence the plaintiff cannot recover."

"4. There is no evidence of any conditions as to the way the lamps acted prior to the accident which would have put the

defendant on any notice that there was any defect in the lamps or equipment.

"5. There is no evidence that the lights went out owing to a defect in the apparatus which the defendant might have discovered and remedied by the exercise of reasonable care."

"9. If the darkness caused the injury complained of, it was a transitory risk for which the defendant is not liable."

The judge refused to make any of the four rulings quoted above and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $500. Thereupon the judge, being of opinion that the right of the plaintiff to recover should be determined by this court, reported the case for such determination. If on the evidence the plaintiff was entitled to have his case submitted to the jury, judgment was to be entered on the verdict; otherwise, judgment was to be entered for the defendant.

*C. C. Barton, Jr.*, for the defendant.

*B. A. Brickley*, for the plaintiff.

PIERCE, J. The facts in their aspects most favorable to the plaintiff's contention could be found to be as follows: The accident happened at 11.50 A. M. in No. 2 hold, on the steamer Prince George. The plaintiff and another longshoreman were engaged in taking out lumber sixteen to eighteen feet long. While the plaintiff was holding the timber, laid lengthwise on a truck, at the back, with both hands and was pushing with his breast, the lights went out; the wheels struck a ring bolt in the floor, the end of the timber "slew around" and crushed the little finger of the plaintiff between the lumber and one of the stanchions.

The lighting arrangement of No. 2 hold consisted of three electric lights on a beam which ran along the middle of the hold. Electricity for these lights was generated in the Prince George and the electric light system was newly installed. For the ten minutes ensuing after the lights went out they "kept going up, they would be up bright one minute and the next time they would be down, pretty near out." A witness testified that on two previous occasions, "the week before the accident and the Thursday before that, . . . while he was working the lights would just go out for a little while and then come up again in exactly the same way as they did on the day of the accident." Another witness testified that somewhere around three or four days before

the accident, on two occasions, he had noticed that sometimes the lights would grow dim, — "go down, in fact, so low that you would see the wire in the bulb, see the red wire, and then they would come up again and brighten."

An electrical expert witness in response to the question "what would be an adequate cause for the lights going out and continuing to flicker?" answered, "It would be some defect in the wiring system, or some improper operation of it; or would be an overloaded condition, or a condition of the wiring where it had become loose or broken away." This witness in cross-examination in response to the question, "You said it was possible — if the lights flickered; that the defect was possibly due to several things?" answered, "No, I said if the lights flickered, it was due to a defect in the wiring system;" and "Inasmuch as there were probably four bulbs involved, it was caused by something further back" in the system than the bulbs. And in response to the question, "What do you understand by 'flickering'?" answered, "Increasing and decreasing in brilliancy, . . . On and off, . . . It is the flickering of light. I do not know any better way to describe it than flickering."

An electrician called by the defendant, in response to the question, "Would you say that the electric lights in the hold of a ship could have flickered for appreciable intervals, in one instance for at least ten minutes, without there being some difficulty or defect either in the apparatus which supplied the electricity, or in the insulation?" answered, "Well, if there was any flickering, there must have been some trouble in the insulation somewhere." He also stated that the condition of flickering would mean some defect in the dynamo.

The evidence was plenary to warrant a finding that the lights flickered and did not go "dead;" that the flickering was due to a defect in the wiring system or in the dynamo; that the defect had existed for at least a week, and that the defendant might have discovered and remedied the defect in the exercise of reasonable care.

We are of opinion that the evidence was rightly submitted to the jury; and by the terms of the report judgment is to be entered on the verdict.

*So ordered.*